UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>GOLD STAR DISTRIBUTION, INC.,<br>a corporation,<br><br>and<br><br>BASSAM ABU SAMRAH,<br>an individual,<br><br>Defendants. | Civil Action No. 26-cv-03976-LMP-ECW<br><br>CONSENT DECREE OF<br>PERMANENT INJUNCTION |

Plaintiff, the United States of America, by its undersigned counsel, having filed a Complaint for Permanent Injunction against Gold Star Distribution ("Gold Star"), a corporation, and Bassam Abu Samrah, an individual (collectively, "Defendants"), and Defendants having appeared and consented to entry of this Consent Decree of Permanent Injunction (hereinafter "this Decree") without contest and before any testimony has been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. This Court has jurisdiction over the subject matter and over all parties to this action.

2. The Complaint for Permanent Injunction states a cause of action against Defendants under the Federal Food, Drug, and Cosmetic Act ("the Act"), 21 U.S.C. §§ 301 *et seq.*

3. Defendants violate the Act, 21 U.S.C. § 331(k), by causing articles of food (including human and animal food, dietary supplements, and infant formula), drugs, devices, and cosmetics within the meaning of the Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. § 321, that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(4) (food), 351(a)(2)(A) (drugs and devices), and 361(c) (cosmetics), in that they have been prepared, packed, or held under insanitary conditions whereby they may have become contaminated with filth or may have been rendered injurious to health. Defendants also violate 21 U.S.C. § 331(k) by causing [] drugs that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. § 351(a)(2)(B), in that the methods used in, or the facilities or controls used for their manufacture, processing, packing, or holding do not conform to, or are not operated or administered in conformity with, current good manufacturing practice to assure that such drugs meet the requirements of the Act as to safety, and have the identity and strength, and meet the quality and purity characteristics, which they purport or are represented to possess.

4. For purposes of this Decree, the following definitions shall apply:

A. "Defendants' Facility" shall refer to the facility (including but not limited to, all storage areas and rooms, loading docks, ancillary spaces, surrounding grounds, and equipment therein) located at 1000 Humboldt Avenue North, Minneapolis, Minnesota and/or any other location(s) at or from which, now or in the future, Defendants receive, hold for sale, or distribute any article of food (including human and animal food,

dietary supplements, and infant formula), drug, device, and/or cosmetic within the meaning of 21 U.S.C. § 321.

B. "Food," for the purposes of this Decree, shall refer to articles of human and animal food, dietary supplements, and infant formula within the meaning of 21 U.S.C. § 321(f), (ff) and (z).

C. "Drugs" shall refer to articles of drugs within the meaning of 21 U.S.C. § 321(g).

D. "Devices" shall refer to articles of devices within the meaning of 21 U.S.C. § 321(h).

E. "Cosmetics" shall refer to articles of cosmetics within the meaning of 21 U.S.C. § 321(i) and 21 C.F.R. § 701.20.

F. "FDA-regulated products" shall refer to articles of food, drugs, devices, and cosmetics as defined in paragraph 4.B-E.

5. As of entry of this Decree, Defendants represent to the Court that they are not licensed in the State of Minnesota to receive, hold for sale, or distribute food, as defined by paragraph 4.B, or drugs, as defined by paragraph 4.C, at or from any location in the State of Minnesota, including at or from Defendants' Facility. Defendants further represent to the Court that, as of August 15, 2026, Defendants are not, directly or indirectly, receiving, holding for sale, or distributing any FDA-regulated products as defined in paragraph 4.F above, at or from any location. Should Defendants intend to resume receiving, holding for sale, and/or distributing any FDA-regulated products at or from Defendants' Facility at any time in the future, Defendants shall:

i. Notify the United States Food and Drug Administration ("FDA") in writing at least sixty (60) calendar days before resuming those operations; and,

ii. Comply with the requirements set forth in paragraph 6.A-J of this Decree.

Defendants' notice shall identify the type(s) of FDA-regulated products that Defendants intend to receive, hold for sale, and/or distribute at or from Defendants' Facility. Defendants shall not resume receiving, holding for sale, and/or distributing any FDA-regulated products until FDA has inspected Defendants' Facility and operations, Defendants have paid the costs of such inspections as required by paragraph 14, and Defendants have received FDA's written notice pursuant to paragraph 6.J.

6. Upon entry of this Decree, Defendants and each and all of their officers, agents, employees, representatives, successors, assigns, attorneys, and any and all persons in active concert or participation with any of them (including individuals, partnerships, corporations, subsidiaries, affiliates, franchisees, and "doing business as" entities) (hereinafter, collectively referred to as "Associated Persons"), who have received actual notice of this Decree by personal service or otherwise, are permanently restrained and enjoined under 21 U.S.C. § 332(a) and the inherent equitable authority of this Court from, directly or indirectly, receiving, holding for sale, or distributing any FDA-regulated products, as defined in paragraph 4.F, at or from Defendants' Facility, unless and until:

A. Defendants retain, at their expense, an independent expert or experts (the "Expert") having no personal or financial ties (other than the retention agreement) to Defendants or their families, and who, by reason of background, education, training, and

experience, is qualified to develop, and ensure adequate implementation of, a written sanitation control program encompassing all of Defendants' operations for all FDA-regulated products; to ensure Defendants' Facility, methods, processes, and controls are established, operated, and administered in conformity with current good manufacturing practice ("CGMP") for drugs (21 U.S.C. § 351(a)(2)(B) and 21 C.F.R. §§ 211.56, 211.58, and 211.142); and to ensure that Defendants comply with the Act and its implementing regulations. Defendants shall notify FDA in writing of the name(s) and qualifications of the Expert(s) within five (5) calendar days after retaining such expert(s);

B. Defendants shall ensure the Expert, after reviewing all of FDA's inspectional observations documented on the Form FDA-483s issued since 2018, and Minnesota Department of Agriculture ("MDA") observations documented in 117 GMP Inspection Reports issued since January 1, 2025, develops a written sanitation control program, and drug storage control plan, acceptable to FDA, which shall, at a minimum, establish and include:

i. Methods, processes, and controls for receiving, holding for sale, and distributing FDA-regulated products at or from Defendants' Facility to ensure that: (a) Defendants' FDA-regulated products are not held under insanitary conditions whereby they may be contaminated with filth, including any microbial and physical contaminants, or otherwise adulterated within the meaning of 21 U.S.C. §§ 342(a)(4), 351(a)(2)(A), and 361(c); and (b) Defendants' Facility is maintained in a clean and sanitary condition, free from rodents, birds, insects, and other pests, and filth, and otherwise in good repair, in

conformity with drug CGMPs, specifically 21 U.S.C. § 351(a)(2)(B) and 21 C.F.R. §§ 211.56 and 211.58;

ii. Processes and controls for storage of articles of drugs under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the articles of drug are not affected when received, held, and/or distributed at or from Defendants' Facility and that ensure that articles of drugs received, held, and/or distributed from Defendants' Facility are stored and held in conformity with drug CGMP, specifically 21 U.S.C. § 351(a)(2)(B) and 21 C.F.R. § 211.142;

iii. A written pest control plan to ensure regular and ongoing inspections of Defendants' Facility by an independent pest control company, as defined under paragraph 6.D;

iv. A written procedure for inspecting incoming FDA-regulated products outside Defendants' Facility to prevent introduction of all rodents, birds, insects, and other pests, and filth, including microbial and physical contaminants, into the Facility;

v. A written plan for continuous pest and filth monitoring and effective remedial action should rodents, birds, and/or other pests, or filth, including any microbial and physical contaminants, be detected; and,

vi. A written employee training program that includes, at a minimum, instruction in exclusion of pests, sanitation control requirements for receiving, holding, and distributing FDA-regulated products, and documentation that each employee has received and understood such training;

C. FDA approves, in writing, the sanitation control program and drug storage control plan developed by the Expert;

D. Defendants retain an independent pest control company having no personal or financial ties (other than a retention agreement) to Defendants or their families, and which, by reason of background, education, training, and experience, is qualified to inspect and perform pest control services. Defendants must ensure the pest control company conducts a comprehensive inspection of Defendants' Facility to ensure no rodents, birds, insects, or any other pests are present. In the event, rodents, birds, insects, or any other pests are detected during the inspection pursuant to this paragraph, Defendants shall ensure the pest control company conducts another inspection within ten (10) calendar days, and every ten (10) calendar days thereafter, until all rodents, birds, insects, and other pests are eliminated. Defendants shall ensure that the pest control company prepares a comprehensive written report of the results of any inspection conducted under this paragraph and the report is provided to FDA and Defendants concurrently within three (3) calendar days of the inspection;

E. Defendants complete the following requirements:

i. Make written copies of the sanitation control program and drug storage control plan available and accessible to all their employees; and,

ii. Assign continuing responsibility and authority for implementing and monitoring the FDA-approved sanitation control program and the drug storage control plan to an employee (or employees) who is/are trained in sanitation control and drug storage

CGMP requirements, and provide such person(s) with the authority and resources to achieve the necessary corrections;

F. Defendants report to FDA in writing the actions that Defendants have taken to bring their operations in compliance with this Decree, the Act, and its implementing regulations, including but not limited to:

i. Documentation that Defendants eliminated, and verified elimination of, all rodents, birds, insects, and other pests, and filth contributed by them, including any microbial and physical contaminants, from Defendants' Facility;

ii. Documentation, including photographs, that Defendants adequately repaired and/or renovated the floors, walls, windows, doors, sewer system, and warehouse building in order to prevent rodents, birds, insects, and other pests from entering Defendants' Facility; and,

iii. Documentation that Defendants thoroughly cleaned and rendered Defendants' Facility sanitary and fit for use in receiving, holding for sale, and distributing FDA-regulated products and have in place adequate procedures to ensure that Defendants' Facility is maintained continuously in such condition;

G. Defendants shall ensure the Expert conducts a comprehensive inspection of Defendants' Facility, methods, processes, and controls used to receive, hold for sale, and/or distribute FDA-regulated products to determine whether Defendants have adequately established and implemented the FDA-approved written sanitation control program and drug storage control plan and whether Defendants are in compliance with the

Decree, the Act, and its implementing regulations. Defendants shall ensure that the Expert verifies, with supporting documentation and photographs, that:

i. Defendants properly established and implemented the sanitation control program and drug storage control plan described in paragraph 6.B.i-vi;

ii. Defendants have adequately addressed all of FDA's inspectional observations since 2018 and MDA's inspection observations since 2025 as described in paragraph 6.B;

iii. Defendants have adequately cleaned and sanitized Defendants' Facility, rendering the Facility fit for use; eliminated all rodents, birds, insects, and other pests, and filth, including microbial and physical contaminants, from Defendants' Facility and verified their elimination; and made all structural renovations and/or repairs to Defendants' Facility necessary to prevent future pest entry;

iv. Defendants' methods, processes, and controls for receiving, holding for sale, distributing articles of drugs are in conformity with CGMPs, specifically 21 U.S.C. § 351(a)(2)(B) and 21 C.F.R. §§ 211.56, 211.58, and 211.142; and,

v. Defendants' methods, processes, and controls used to receive, hold for sale, and/or distribute FDA-regulated products at or from Defendants' Facility are, in the Expert's opinion, in compliance with this Decree, the Act, and its implementing regulations. Defendants shall ensure that the Expert submits a written report of all findings, with supporting documentation and photographs, to Defendants and FDA concurrently within ten (10) business days of completing the inspection;

H. FDA, as it deems necessary to evaluate Defendants' compliance with the terms of this Decree, the Act, and its implementing regulations, conducts inspections of Defendants' Facility and relevant records contained therein;

I. Defendants pay all costs of inspections, analyses, reviews, investigations, examinations, and supervision for FDA's oversight with respect to paragraph 6 at the rates set forth in paragraph 13 below; and,

J. FDA notifies Defendants in writing that Defendants appear to be in compliance with this Decree, the Act, and its implementing regulations, and authorizes Defendants to resume receiving, holding for sale, and distributing FDA-regulated products at or from Defendants' Facility. If FDA's written notification is limited to only certain FDA-regulated products, or any combination or subset thereof, Defendants shall only resume receiving, holding for sale, and distributing FDA-regulated products as identified in FDA's written notification.

7. Within sixty (60) calendar days after entry of this Decree, Defendants shall destroy, under FDA supervision and pursuant to a written destruction plan approved by FDA in writing prior to implementation, all FDA-regulated products, as defined in paragraph 4.F, in their custody, control, or possession as of the entry of this Decree. Defendants shall bear the costs of the destruction and the costs of FDA's supervision incurred under this paragraph at the rates set forth in paragraph 13. Defendants shall not dispose of any FDA-regulated products in a manner contrary to the provisions of the Act, any other federal law, or the laws of any State or Territory in which the products are disposed.

8. Defendants shall retain an independent person or persons (the "Auditor") who shall meet the criteria for, and may be the same person as, the Expert(s) described in paragraph 6.A to conduct audit inspections of the Defendants' Facility and the methods, processes, and controls used to receive, hold for sale, and/or distribute FDA-regulated products, as follows:

A. Within thirty (30) calendar days after Defendants resume their operations, Defendants shall ensure that the Auditor conducts a comprehensive audit inspection of Defendants' Facility and the methods, processes, and controls used to receive, hold, and/or distribute FDA-regulated products, to determine whether Defendants are operating in compliance with this Decree, the Act, and its implementing regulations, and to identify any deviations from those requirements.

B. Thereafter, Defendants shall ensure that the Auditor conducts one audit inspection every six (6) months for a period of one year and not less than once every twelve (12) months for a period of four years thereafter, for a total of five (5) years of auditing. During each audit inspection, Defendants shall ensure that the Auditor verifies that Defendants' Facility and the methods, processes, and controls that Defendants use to receive, hold, and distribute FDA-regulated products are in compliance with the requirements of this Decree, the Act, and its implementing regulations, and shall certify compliance in the Audit Report. As a part of every Audit Report (except the first one), Defendants shall ensure that the Auditor assesses the adequacy of actions taken by Defendants to correct all previous audit observations indicating that Defendants are not in compliance with this Decree, the Act, or its implementing regulations. If an Audit Report

contains any Audit Report Observations, Defendants shall, within thirty (30) business days of receipt of the Audit Report, correct those observations, unless FDA notifies them that a shorter time period is necessary.

C. Defendants shall ensure that the Auditor submits an Audit Report documenting all findings to Defendants and FDA concurrently within seven (7) business days after completing the audit inspection.

9. Upon entry of this Decree, and after receiving FDA's written notification pursuant to paragraph 6.J, Defendants and each and all of their Associated Persons are permanently restrained and enjoined under the provisions of 21 U.S.C. § 332(a) from directly or indirectly doing or causing any of the following acts:

A. Violating 21 U.S.C. § 331(k), by causing FDA-regulated products, as defined in paragraph 4.F, that are held for sale after shipment of one or more of their components in interstate commerce to become adulterated within the meaning of 21 U.S.C. §§ 342(a)(4), 351(a)(2)(A), 351(a)(2)(B), or 361(c); and,

B. Failing to implement and continuously maintain the requirements of this Decree.

10. If at any time after entry of this Decree, FDA determines, based on the results of an inspection, an Audit Report, or other information, that Defendants are not in compliance with the Act, its implementing regulations, or this Decree, or that additional corrective actions are necessary to achieve compliance with this Decree, the Act, or its implementing regulations, FDA may, as and when it deems necessary, order Defendants in writing to take appropriate corrective actions, including, but not limited to, the following:

A. Cease receiving, holding for sale, and distributing FDA-regulated products, as defined in paragraph 4.F, at or from Defendants' Facility;

B. Recall, at Defendants' expense, any FDA-regulated products, as defined in paragraph 4.F, that are adulterated, misbranded, or otherwise in violation of this Decree, the Act, or its implementing regulations;

C. Revise, modify, or expand any report(s) or plan(s) prepared pursuant to this Decree;

D. Submit additional reports of information to FDA; and/or,

E. Take any other corrective actions as FDA, in its discretion, deems necessary to bring Defendants into compliance with this Decree, the Act, or its implementing regulations. The provision of this paragraph shall be separate and apart from, and in addition to, all other remedies available to FDA. Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's inspections, investigations, supervision, analyses, examinations, sampling, testing, reviews, document preparation, travel and subsistence expenses to implement and monitor the remedies set forth in this paragraph, at the rates specified in paragraph 13 of this Decree.

11. Upon receipt of any order issued by FDA pursuant to paragraph 10, Defendants shall immediately and fully comply with the terms of the order. Any cessation of operations or other action as described in paragraph 10 shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with the Decree, the Act, and the implementing regulations, and that Defendants may resume operations. After a cessation of operations, and while determining whether Defendants are

in compliance with this Decree, the Act, and the implementing regulations, FDA may require Defendants to re-institute or re-implement any of the requirements of this Decree. In no circumstances shall FDA's silence be construed as a substitute for written notification.

12. Representatives of FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' Facility, and, without prior notice, take any other measures necessary to monitor or ensure continuing compliance with the terms of this Decree, the Act, and the implementing regulations. During such inspections, FDA representatives shall be permitted to access buildings, equipment, ingredients, in-process and finished materials, containers, and packaging material(s), labeling, and other material therein; to take photographs and make video recordings; to take samples of Defendant's materials and products, containers, packaging material(s) labeling and other material; to examine and copy all records relating to the packaging, holding for sale, and distributing of any and all FDA-regulated products and/or relating to the sanitation of the facilities. The inspections shall be permitted upon presenting a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is separate from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374. The cost of all such inspections shall be borne by Defendants at the rates specified in paragraph 13.

13. Defendants shall pay all costs of FDA's inspections, investigations, supervision, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with this Decree, including all transportation and associated costs for FDA investigators and experts, at the standard rates prevailing at the time costs are

incurred. Defendants shall make payment to FDA within twenty (20) business days after receiving an electronic invoice for payment, which shall be sent to sam@goldstardist.com. Defendants shall make payment through the Pay.gov electronic billing system, subject to all interest, fees, and penalties applicable to delinquent payments, in accordance with 31 U.S.C. § 3717 and 45 C.F.R. § 30. As of the date that this Decree is signed by the parties, these rates are: $120.26 per hour or fraction thereof per representative for inspection and investigative work; $144.13 per hour or fraction thereof per representative for analytical or review work; $0.725 per mile for travel by automobile; government rate or the equivalent for travel by air or other means; and the published government per diem rate for subsistence expenses, where necessary. In the event that the standard rates for FDA inspections, investigations, supervision, analyses, examinations, or reviews are modified, these rates shall be increased or decreased without further order of the Court. Defendants shall notify FDA within fifteen (15) business days if the email address at which Defendants receive electronic invoices changes.

14. Within five (5) business days after entry of this Decree, Defendants shall prominently post a copy of this Decree (in English and any other language necessary to convey the substance of the Decree) in a conspicuous location in an employee common area at Defendants' Facility and shall ensure that the Decree remains posted for as long as the Decree remains in effect. Within ten (10) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph.

15. Within ten (10) business days after entry of this Decree, Defendants shall hold a general meeting or a series of smaller meetings for all Associated Persons, at which they shall describe the terms and obligations of this Decree (in English and any other language necessary to convey the substance of the Decree). Within fifteen (15) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph and a copy of the agenda, list of attendees, and meeting minutes from the meeting(s) held pursuant to this paragraph.

16. Within ten (10) business days after entry of this Decree, Defendants shall provide a copy of the Decree by personal service or certified mail (return receipt requested) to each and all of their Associated Persons. Within twenty (20) business days after entry of this Decree, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who have received a copy of this Decree, and attaching a copy of the executed certified mail return receipts.

17. In the event that any Defendant becomes associated with any additional Associated Persons at any time after entry of this Decree, Defendants shall immediately provide a copy of this Decree, by personal service or certified mail (return receipt requested), to such Associated Person(s). Within five (5) business days after each time that any of the Defendants becomes associated with any additional Associated Persons, Defendants shall provide to FDA an affidavit, from a person with personal knowledge of the facts stated

therein, stating the fact and manner of compliance with this paragraph, identifying the names, addresses, and positions of all Associated Persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts.

18. Defendants shall notify FDA in writing at least thirty (30) calendar days before any change in location, ownership, or character of their business, such as reorganization, dissolution, assignment, or sale resulting in the emergence of a successor corporation or business entity, the creation or dissolution of subsidiaries, or any other change in the corporate or business structure of any newly-formed business entity (including any "doing business as" entity) over which Defendants have authority, or the sale or assignment of any business assets, such as buildings, equipment, or inventory, that may affect compliance with this Decree. Defendants shall provide a copy of this Decree to any successor or assignee at least thirty (30) calendar days prior to assignment or change in ownership. Defendants shall furnish FDA with an affidavit of compliance with this paragraph at least thirty (30) calendar days prior to such assignment or change in ownership.

19. If any Defendant fails to comply with the provisions of this Decree, the Act, or its implementing regulations, including any time frame imposed by this Decree, then Defendants shall pay to the United States of America: four thousand dollars ($4,000) in liquidated damages for each day such violation continues; an additional sum of three thousand dollars ($3,000) in liquidated damages per day per violation of this Decree, the Act, or its implementing regulations; and an additional sum in liquidated damages equal to twice the retail value of any product distributed in violation of this Decree, the Act, or its implementing regulations. Defendants understand and agree that the liquidated damages

specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, or this Court to impose, additional civil or criminal penalties to be paid by Defendants, or remedies based on the conduct that may also be the basis for payment of liquidated damages pursuant to this paragraph.

20. Should the United States bring and prevail in a contempt action to enforce the terms of this Decree, Defendants shall, in addition to other remedies, reimburse the United States for its attorneys' fees (including overhead), expert witness fees, travel expenses incurred by attorneys and witnesses, investigational and analytical expenses, administrative and court costs, and any other costs or fees relating to such contempt proceedings.

21. All decisions specified in this Decree shall be vested in the discretion of FDA. FDA's decisions shall be final and, to the extent that these decisions are subject to review, shall be reviewed by the Court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by a court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record that was before FDA at the time of the decision. No discovery shall be authorized or allowed by either party.

22. All notifications, correspondence, and communications to FDA required by the terms of this Decree shall: be prominently marked "Gold Star Distribution, Inc. Consent Decree Correspondence"; reference this civil action by case name and civil action number; and be submitted electronically via email to HFP-OCE-ConventionalFoods@fda.hhs.gov. If electronic submission is not possible, communications shall be addressed to the attention of Human Foods Program – Office of Compliance and Enforcement, Office of Enforcement – Division of Conventional Foods, 5001 Campus Drive, College Park, MD 20740. FDA will

notify Defendants if the email and/or physical mailing address at which FDA receives these communications changes.

23. Except as provided in the foregoing provisions of this Decree, the parties shall bear their own costs and attorneys' fees in this action.

24. This Court shall retain jurisdiction of this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary or appropriate.

IT IS SO ORDERED this 21st day of September, 2026.

Laura M. Provinzino
LAURA M. PROVINZINO
UNITED STATES DISTRICT JUDGE

We hereby consent to the entry of the foregoing Decree.

Dated: August 31, 2026

FOR THE DEFENDANTS:

Bassam Abu Samrah
Individually and on behalf of
GOLD STAR DISTRBUTION, INC.

(counsel for Defendants)

Respectfully Submitted,

FOR THE PLAINTIFFS:

DANIEL N. ROSEN
United States Attorney

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SARMAD M. KHOJASTEH
Deputy Assistant Attorney General
Civil Division

LISA K. HSIAO
Acting Director
Enforcement & Affirmative Litigation Branch

ROGER J. GURAL
Assistant Director

DAVID SULLIVAN
Senior Litigation Counsel
Louisiana Bar No. 27303
Senior Litigation Counsel
United States Department of Justice
Enforcement & Affirmative Litigation Branch
450 Fifth Street NW, Ste. 6400 South
Washington, D.C. 2001
Tel.: (202) 598-3242
david.sullivan2@usdoj.gov

OF COUNSEL:

ROBERT FOX FOSTER
Acting General Counsel
U.S. Department of Health
and Human Services

SEAN R. KEVENEY
Chief Counsel
Food and Drug Administration

SHANNON M. SINGLETON
Deputy Chief Counsel, Litigation

MAGGIE R. REDDEN
Associate Chief Counsel for Enforcement
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993-0002